RECEIVED

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
☐ Eastern (Jackson)   DIVISION
☒ Western(Memphis) DIVISION

2018 DEC 28   PM 5: 26

Sharon Fisher     )
                  )
    Plaintiff,    )
                  )
vs.               )    No. _____
                  )
FedEx Express     )
                  )
    Defendant.    )
                  )

## COMPLAINT

1. This action is brought for discrimination in employment pursuant to *(check only those that apply)*:

   [x] Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) (race, color, gender, religion, national origin).
   ***NOTE:*** *In order to bring a suit in federal district court under Title VII, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission.*

   [ ] Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 – 634 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub. L. No. 92-592, the Civil Rights Act of 1991, Pub. L. No. 102-166)
   ***NOTE:*** *In order to bring a suit in federal district court under the Age Discrimination in Employment Act, you must first file charges with the Equal Employment Opportunity Commission.*

   [x] Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 – 12117 (amended by the ADA Amendments Acts of 2008, Pub. L. No. 110-325 and the Civil Rights Act of 1991, Pub. L. No. 1102-166).
   ***NOTE:*** *In order to bring a suit in federal district court under the Americans with Disabilities Act, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission.*

## JURISDICTION

2. Jurisdiction is specifically conferred upon this United States District Court by the aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343. Jurisdiction may also be appropriate under 42 U.S.C. §§ 1981, 1983 and 1985(3), as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166, and any related claims under Tennessee law.

## PARTIES

3. Plaintiff resides at:

<u>7406 Ashley Oaks Drive - Memphis, TN</u>
STREET ADDRESS

<u>Shelby</u>, <u>Tennessee</u>, <u>38125</u>, <u>(901) 356-9560</u>.
County        State           Zip Code      Telephone Number

4. Defendant(s) resides at, or its business is located at:

<u>3690 Hacks Cross Rd, Bldg I</u>
STREET ADDRESS

<u>Shelby</u>, <u>Memphis</u>, <u>Tennessee</u>, <u>38125</u>.
County     City        State         Zip Code

NOTE: If more than one defendant, you must list the names, address of each additional defendant.

_____

_____

_____

_____

_____

5. The address at which I sought employment or was employed by the defendant(s) is:

<u>3690 Hacks Cross Rd, Bldg I</u>

2

STREET ADDRESS

| Shelby | , | Memphis | , | Tennessee | , | 38125 | . |
|---|---|---|---|---|---|---|---|
| County | | City | | State | | Zip Code | |

6. The discriminatory conduct of which I complain in this action includes *(check only those that apply)*

- ☐ Failure to hire
- ☐ Termination of my employment
- ☐ Failure to promote
- ☒ Failure to accommodate my disability
- ☒ Unequal terms and conditions of my employment
- ☒ Retaliation
- ☒ Other acts *(specify)*: __Harrassment__

**NOTE:** *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.*

7. It is my best recollection that the alleged discriminatory acts occurred on:
   _7/23/15, 10/1/15, 10/16/15, 6/4/16, 6/17/16, 7/30/16, 5/5/17, 8/11/17, 8/31/16_.
   Date(s)

8. I believe that the defendant(s) *(check one)*:

   - ☒ is still committing these acts against me.
   - ☐ is not still committing these acts against me.

9. Defendant(s) discriminated against me based on my:
   *(check only those that apply and state the basis for the discrimination. For example, if religious discrimination is alleged, state your religion. If racial discrimination is alleged, state your race, etc.)*

3

[X] Race __- Black_____

[ ] Color_____

[ ] Gender/Sex_____

[ ] Religion_____

[ ] National Origin_____

[X] Disability __- Cancer Patient_____

[ ] Age. If age is checked, answer the following:
I was born in_____. At the time(s) defendant(s) discriminated against me.

I was [ ] more [ ] less than 40 years old. *(check one)*

**NOTE:** *Only those grounds raised in the charge filed the Equal Employment Opportunity Commission can be considered by the federal district court.*

10.  The facts of my case are as follows:

On September 25, 2017, I filed a complaint against my employer with the Memphis EEOC office located at 1407 Union Avenue, Suite 901. Upon my Intake session I was assigned Charge No.: 490-2017-02868. In October 2018, I received a Right to Sue letter from the EEOC Little Rock Arkansas office without being given the opportunity to rebuttal to the position statement submitted by my employer, FedEx Express. The reason to terminate the processing of my Charge were listed in the letter received. Upon being issued the Right to Sue, I am filing suit with the United States District Court -Western Division of Tennessee.

(Continuation sheets are attached)

*(Attach additional sheets as necessary)*

**NOTE:** *As additional support for your claim, you may attach to this complaint a copy of the*

*charge filed with the Equal Employment Opportunity Commission or the Tennessee Human Rights Commission.*

11. It is my best recollection that I filed a charge with the Tennessee Human Rights Commission regarding defendant's alleged discriminatory conduct on:_____

12. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct on: __9/25/17__ .
                                                                                                                                                            Date

**Only litigants alleging age discrimination must answer Question #13.**

13. Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct. *(check one):*

   ☐ 60 days or more have elapsed

   ☐ Less than 60 days have elapsed.

14. The Equal Employment Opportunity Commission *(check one)*:

   ☐ has **not** issued a Right to Sue Letter.

   ☒ **has** issued a Right to Sue letter, which I **received** on __10/1/2018__ .
                                                                                                                                                                              Date

*NOTE:* This is the date you *received* the Right to Sue letter, not the date the Equal Employment Opportunity Commission issued the Right to Sue letter.

15. Attach a copy of the Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.

*NOTE: You must attach a copy of the right to sue letter from the Equal Employment Opportunity Commission.*

16. I would like to have my case tried by a jury:

   ☒ Yes

   ☐ No

10. <u>The facts of my case are as follows:</u>

1. On September 25, 2017, Plaintiff filed a complaint against FedEx Express with the Memphis EEOC office located at 1407 Union Avenue, Suite 901. The complaint alleged employment violations in regards to disability, harassment, retaliation, and race discrimination. Upon Intake session, Plaintiff complaint was accepted and assigned Charge No.: 490-2017-0286.

2. Plaintiff was assigned a Federal Investigator in late February 2018. In October 2018, Plaintiff received a Right to Sue letter from the EEOC Little Rock Arkansas office without being given the opportunity to rebuttal to the position statement submitted by Plaintiff's employer, FedEx Express. The reasons as to terminating Plaintiff's Charge were listed in the letter received. Upon being issued the Right to Sue, Plaintiff is filing suit with the United States District Court -Western Division of Tennessee.

3. Plaintiff was first hired as a handler by FedEx Express on March 21, 1994. Plaintiff's employment lasted only 3 months due to injuries Plaintiff received on the morning of April 4, 1994 after an attempted hijacking that occurred the previous night. Plaintiff was rehired on October 6, 2006 as a Command and Control Analyst in C4 by Michael Flippin. In 2008, Plaintiff went under the management of Kinei Lin. Plaintiff was promoted to Senior Command and Control Analyst on March 1, 2009.

4. FedEx Express operates under a Fiscal Year beginning June 1 of a current year thru May 31 of the next year. Example: FY15 Fiscal Year is June 1, 2014 thru May 31, 2015

5. In June 2014, Plaintiff went back under the management of Michael Flippin. Plaintiff works a schedule shift of Thursday thru Sunday. For the FY15, Plaintiff was made project lead of department's AIC 'System Team'. Plaintiff's team responsibility was to ensure that each department's employee became knowledgeable of the systems monitored and providing a schematic that gave an overall view of the monitoring system's infrastructure. The Project ensured that each person also had access to equipment in doing their job. The project included replacing old equipment and disposing of that equipment. A major part of the project was setting up a process by which employees could take computers home to do work if needed.

6. In December 2014, Plaintiff was diagnosed with breast cancer. Plaintiff submitted FMLA documents which were completed by Plaintiff's Oncologist. The medical leave was approved by FedEx Express – HCMP Advisor Michelle Gailey (see attachments). Prior to going out on medical leave, Plaintiff discussed her illness with

her manager, Michael Flippin, and Plaintiff's Senior Manager, Jonah Odum. Other team members were also knowledgeable of Plaintiff's medical situation.

7. Plaintiff returned to work in February 2015. No additional work had been completed by the System Team since Plaintiff had gone out on medical leave. The project deadline was set for the end of April. As Plaintiff worked to bring things closer to a finish status, Plaintiff had an outpatient surgery performed in March. As time passed, Plaintiff was seen more frequently wearing a scarf, which was not a prohibited item for women to wear in the workplace. However, Plaintiff was being to lose hair as a result of cancer medication.

8. In April Plaintiff borrowed an old computer monitor to aid in completing the AIC project, on her own time, while working at home. Plaintiff could rest as needed instead of being constrained to constantly sitting at her work desk. The month of May came and the project ended. On July 11, 2015, Plaintiff was suspended for borrowing the monitor. On July 23, 2015, Plaintiff was terminated by Michael Flippin for what was considered unauthorized possession of Company property. Plaintiff's termination was approved by Jonah Odum and HR Advisor, Chris Frazier.

9. During the termination process, Plaintiff was provided with a Guaranteed Fair Treatment (GFT) packet. The packet is an in-house process to which employees could submit in contesting various company decisions. Plaintiff filed the GFT packet on July 28, 2015.

10. Documentation included statement pertaining to Plaintiff being diagnosed with cancer and Plaintiff's reasons as to why the monitor was borrowed. The GFT meeting was held with Managing Director, Steve Cox, Jonah Odum, Michael Flippin and HR Advisor, Chris Frazier. Plaintiff's termination was upheld by Steve Cox, thus Plaintiff remained unemployed.

11. On August 9, 2015, Plaintiff applied for unemployment with the Department of Labor (DOL), but it was denied. Plaintiff filed an Appeal with the DOL on August 26, 2015. Within Plaintiff's statement, Plaintiff spoke of being diagnosed with Cancer and Michael Flippin being aware of situations by which equipment was missing. Those employees had not been suspended nor terminated. On September 25, 2015, the Department of Labor ruled in behalf of the Plaintiff to receive unemployment benefits.

12. Plaintiff elected to move to step 2 of the GFT process and filed again. In September 2015, Plaintiff meet with Richard Smith, Vice President of Global Trade Services (GTS) and Chris Frazier. Plaintiff provided documentation which showed that Plaintiff's manager, Michael Flippin, knew of other employees who had borrowed laptops but had not returned the equipment back to work. Yet no one else in the

department received had received any disciplinary actions or been terminated. Richard Smith overturned the decision and Plaintiff's employment was reinstated.

13. Plaintiff returned to work on Thursday, September 24, 2015. Plaintiff was met at the security gate by Jonah Odum. Upon walking with Odum to his office, Plaintiff was issued a Warning Letter and one (1) week of disciplinary suspension without pay. Odum informed Plaintiff that she had been set back-up in FedEx's computer system and that he would activate Plaintiff's account by enabling Plaintiff password. Upon completing the activation, Plaintiff was given her company badge and proxy card to gain access to company grounds.

14. Plaintiff went to her desk and began working. Later in the morning, Plaintiff encountered various problems with her profile in that Plaintiff could not access various system. Plaintiff reported the issue to Odum. Plaintiff worked with Odum the majority of the day to get various issues resolved.

15. On October 1, 2015, Jonah Odum attempted to issue Plaintiff an OLCC. OLCC stands for Online Counseling and Compliment. It is a system that maintains a permanent record of employee compliments and counseling occurrences throughout the employee's tenure with FedEx. Employee cannot challenge a manager's entry into the OLCC system, even when entries are false. FedEx considers these items to not be disciplinary in action. However, they can be used to rule on future disciplinary actions against an employee.

16. Odum informed Plaintiff that someone had called into the FedEx Hotline and complained that Plaintiff was walking with fellow employees, using profanity and causing a disruption in the workplace. Odum stated that the caller gave only the Plaintiff's name. Thus Odum stated that he must do an investigation; therefore, he needed a written statement from the Plaintiff (see attachment). Plaintiff informed Odum that he should have known that this was not true because Plaintiff had been with him the first day to which Plaintiff had returned to work. Plaintiff informed Odum that the phone call was a prank and so was the investigation. Plaintiff informed Odum that his actions to issue an OLCC were harassment upon employment being reinstated

17. On the morning of October 16, 2015, Jonah Odum issued Plaintiff a documented (OLCC) similar to the situation that he tried to imitate on October 1, 2015. He stated again that Plaintiff used profanity and that Plaintiff spoke of specific details of an investigation to Plaintiff's co-workers. The EEOC letter that the Plaintiff stated that Plaintiff was issued a counseling by Michael Flippin. It was Jonah Odum who issued the counseling in retaliation of Plaintiff obtaining my job back. Michael Flippin acted as a witness to Plaintiff refusing to sign-off on the document that Jonah was issuing.

18. Still under the management of Michael Flippin, on October 1, 2015, Plaintiff was given her FY15 Performance Review by Michael Flippin. Plaintiff received a successful rating of 5.8 (see attachment). Being that Plaintiff had already been disciplined for borrowing the monitor, adding the Warning Letter to Plaintiff work performance would be taking disciplinary actions on an employee twice.

19. On October 2, 2015, Plaintiff was transferred under the management of Richmond Willard. Willard remained Plaintiff manager until March 1, 2016. Prior to Willard's departure, Willard had Plaintiff to submit her Propel objectives and accomplishments in order that he may rate Plaintiff's year-end performance review. Plaintiff submitted her Propel entries knowing that knowledge of her rating would not been visible until FY16 had ended.

20. On March 2, 2016, Plaintiff temporarily went under the management of Jonah Odum.

21. On May 1, 2015, Laurie Kimura was hired in replacement of Richmond Willard.

22. On June 1, 2015, Plaintiff went under the management of Laurie Kimura. This would be for the FY17 Fiscal Year. Laurie had been Plaintiff's manager for 4 days when she confronted Plaintiff on Thursday, June 4, 2015, about wearing a scarf. Laurie told Plaintiff that she was unprofessional and that Plaintiff was to make provisions not to wear a scarf starting the upcoming week. The next day Plaintiff was confronted by Jonah Odum. Plaintiff and Odum spoke of Laurie's request. Odum knew of Plaintiff being a cancer patient and losing her hair. As Plaintiff spoke freely to Odum about losing her hair, Odum stated "so what, I am losing my hair"

23. Plaintiff asked Odum what was wrong with the scarf that was being worn. Odum informed Plaintiff that the material of the scarf was "mesh". Not knowing what "mesh" meant, Plaintiff informed Odum that she purchase some new scarfs. Plaintiff purchased several new scarf that evening after work. On Saturday, June 6, 2015, Plaintiff wore one of the new scarfs to work.

24. On June 6, 2016 Laurie Kimura suspended Plaintiff for wearing a scarf. An investigation was pending. Plaintiff's ID badge was taken and Plaintiff's proxy card was taken. Security was contacted and escorted Plaintiff off the company grounds.

25. On June 17, 2016 Plaintiff received a phone call from Laurie Kimura. Kimura informed Plaintiff to meet her at the Winchester gate and that she would have security escort Plaintiff to building I. Minutes later, Plaintiff received instruction via voice mail from Kimura that consisted of Plaintiff going to the Hack Cross gate and lying to company security to get on company ground. This would have been an automatic termination if acted out by the Plaintiff.

26. Plaintiff reported the situation FedEx security and to HR Advisor, Chris Frazier HR. Upon speaking with Chris Frazier, she simply asked the Plaintiff if she was inside the gate.

27. On June 17, 2016, Plaintiff was allowed to return to work with a Warning Letter and an OLCC. Plaintiff filed a GFT to contest the documents. Company policy does not list headwear as an unacceptable item (see attachment). Prior to attending the GFT meeting, Laurie Kimura present in her management Rational that Plaintiff "was a woman" and that women are allowed to wear scarfs. The Warning Letter was upheld held by upper management. The OLCC that Plaintiff received stated that Plaintiff could be terminated if Plaintiff discussed the issues revolving around the events.

28. As it was openly discussed in the GFT meeting, everyone present knew that Plaintiff was a cancer patient and the reason that Plaintiff was wearing a scarf was because Plaintiff was losing hair. Needless to say, it was stated that Plaintiff did not have a valid reason for wearing a scarf. Laurie later provided Plaintiff with pictures of what Laurie felt that Plaintiff should be wearing in the workplace. The items that Laurie identified to be acceptable consisted of headband items (see photos). This was not something that a cancer patient would wear upon the loss of hair. Laurie request was one of retaliation, harassment, and discriminating against Plaintiffs' disability.

29. In June 2016, Plaintiff requested permission from the HCMP to wear full headwear that would completely cover Plaintiff's head as opposed to what Laurie stated that Plaintiff should wear. The FedEx HCMP is the only who person can make a ruling in a medical decision. The HCMP was not even confronted at any time during any of the situations that involved Plaintiff's medical issue. If the HCMP had been contacted, no disciplinary actions would have been taken against Plaintiff.

30. In November 2016, Laurie suspended Plaintiff again and issued Plaintiff another OLCC for wearing a scarf. Laurie stated that Plaintiff could not wear the scarf to which she had originally declared unprofessional. Plaintiff had proven in the GFT session that the scarf was not made of "mesh" material and it did not contain and graphic writing. Laurie stated that it had a logo in its design; therefore, it was not acceptable.

31. Laurie Kimura did not use the rating score that was submitted by Richmond Willard for Plaintiff's FY16 performance review. Laurie rated Plaintiff again with the events that occurred in FY15 and with statements provided by Jonah Odum.

32. Laurie went back 4 years in Plaintiff history to aid in issuing Plaintiff a low performance review and providing Plaintiff what is called a Decision Day. This is a process by which Plaintiff is to submit a performance improvement letter that must

    meet Plaintiff's manager approval. If an approval is not meet, Plaintiff is forced to resign.

33. In May 2017, Plaintiff was issued an OLCC when Plaintiff accidentally sent an email out to others whom Plaintiff had not intended on copying. As Plaintiff attempted to copy Kimura's managing director (MD) on an email that Plaintiff was sending Laurie Kimura, Plaintiff selected a distribution list that was similar to the MD's name. Shortly thereafter, the MD had the naming of her distribution list changed in order that it would not be easily mistaken again (see attachment). It is at this point that the MD is just as much to blame for the error as Plaintiff committing the error. Plaintiff should not have received an OLCC.

**WHEREFORE,** plaintiff prays that the Court grant the following relief:

☐ direct that the Defendant employ Plaintiff, or

☐ direct that Defendant re-employ Plaintiff, or

☐ direct that Defendant promote Plaintiff, or

☒ order other equitable or injunctive relief as follows: __Punitive damages__

☐ direct that Defendant pay Plaintiff back pay in the amount of _____ and interest on back pay;

☒ direct that Defendant pay Plaintiff compensatory damages: Specify the amount and basis for compensatory damages: __$5,000,000.00: Pain and suffering, declamation of character, intent to do harm__

_[signature]_
SIGNATURE OF PLAINTIFF

Date: 12/28/18

7406 Ashley Oaks Dr
Address

Memphis, TN 38125

(901) 356-9560
Phone Number